IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.   CR-21-144-SLP |
| ) |                 CIV-22-1070-SLP |
| MIGUEL ANGEL AGUILAR PLASCENCIA, ) | |
| ) | |
| Defendant. ) | |

## **O R D E R**

Before the Court is Defendant's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. No. 51] to which the Government has responded [Doc. No. 61].[1] Defendant has filed a "Statement of Facts", *see* [Doc. No. 64], which the Court construes as a Reply in support of his 2255 Motion.[2] Also before the Court is Defendant's Motion for Appointment of Counsel [Doc. No. 66].

---

[1]   The Court previously granted the Government's request to file its response under seal. *See* Mot. [Doc. No. 59] and Order [Doc. No. 60]. The Government's request was premised on that fact that the "the Government's Response discusses the defendant's Presentence Investigation Report (PSR), and attached documents related to the same." Mot. at 1. The Court granted the request without the benefit of the Response having yet been filed. Upon review of the Response, the Court finds the limited aspects of the PSR referenced in the Response are not sensitive in nature and, therefore, directs the Clerk of Court to unseal the Response.

[2]   Defendant raises a number of new claims in his Reply that were not included in his § 2255 Motion including: (1) a challenge that his arrest was made without probable cause; (2) his consent to search his car was not voluntary; and (3) counsel should have moved to withdraw his plea prior to sentencing. He has waived these claims. *See United States v. Herget*, 585 F. App'x 948, 950-51 (10th Cir. 2014) (holding that grounds raised for the first time in a reply brief to a § 2255 motion are waived) (citing *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174-75 (10th Cir. 2005)). Courts apply this rule because waiting to raise new arguments in reply "robs the [respondent] of the opportunity to demonstrate that the record does not support a [petitioner's] factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result. The rule also protects this court from publishing an erroneous opinion because [it] did not have the benefit of the . . . response." *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) (citation omitted).

These matters are at issue. Upon review and for the reasons that follow, the Motion is DENIED.[3]

## I.    Factual and Procedural History

On August 10, 2021, Defendant entered a guilty plea to a one-count Superseding Information charging him with possession of a quantity of a mixture or substance containing a detectable amount of methamphetamine its salts, isomers, or salts of its isomers, a Schedule II controlled substance, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Defendant was represented by appointed counsel, Julia Summers.

The charge against Defendant arose from an investigation by the Drug Enforcement Administration (DEA) in May 2021 at which time, as part of surveillance of a suspected drug operation, agents observed Defendant briefly enter a car dealership in Oklahoma City carrying a shoulder bag and leave the dealership carrying the shoulder bag. PSR [Doc. No. 40], ¶¶ 18-19. Agents then followed Defendant in his car to a residence located at 2113 Southwest 60th Street in Oklahoma City. *Id.*, ¶ 18. Defendant parked his vehicle in front of the residence and exited the vehicle at which time agents approached him. *Id.* Defendant began to back away and act erratic so the agents detained him for safety purposes. *Id.* Defendant told the agents the vehicle belonged to him and gave the agents consent to search the vehicle. *Id.*, ¶ 19. Agents found approximately 1,255.2 grams of methamphetamine in a black bag, consistent with the bag Defendant was observed carrying at the car dealership.

---

[3]    The record reflects Defendant has filed a Petition for Writ of Mandamus with the Tenth Circuit Court of Appeals. *See* Petition [Doc. No. 67]. The filing of a mandamus petition does not divest this Court of jurisdiction. *Kellogg v. Watts Guerra*, 41 F.4th 1246, 1259 (10th Cir. 2022).

*Id.* Agents read Defendant his *Miranda* rights and Defendant agreed to speak with them. *Id.*

Defendant told the agents that the residence, 2113 Southwest 60th Street, belonged to a friend and denied the residence was his. *Id.*, ¶¶ 19-20. The agents located a key in the vehicle that unlocked the residence. *Id.*, ¶ 20.[4]

After securing a search warrant, the agents found inside the residence and the garage of the residence additional drugs (434 grams of cocaine and 55.1 grams of methamphetamine) and $175,120 in currency. *Id.*, ¶ 22. Although the plea agreement attributed 1,225 grams of methamphetamine to Defendant (which carried a base offense level of 30), the PSR held Defendant accountable for 60,029.2 kilograms of converted drug weight (which carried a base offense level of 36). *Id.*, ¶ 71. That amount was largely driven by the amount of drug-related proceeds (the $175,120.00 currency) found during the search of the residence. *Id.*, ¶ 22.

Defendant also received enhancements for possessing a firearm in connection with drug trafficking under USSG § 2D1.1(b)(1) and maintaining a drug involved premises under USSG § 2D1.1(b)(12). *Id.*, ¶¶ 28-29. After acceptance of responsibility, Defendant faced an offense level of 37, which yielded an advisory guideline range of 292-365 months, reduced to 240 months due to the statutory maximum sentence. *Id.*, ¶¶ 35-37, 69.

Defendant's plea agreement contained a stipulation that "the amount of mixture or substance containing a detectable amount of methamphetamine associated with

---

[4] As discussed infra, the agents did not enter the residence at that time but obtained a search warrant before searching the residence.

defendant's relevant conduct in this case is 1,225 grams" – which is the amount initially found in defendant's vehicle outside the residence.  Doc. 30 at 7; *see also* PSR, ¶ 22.  The plea agreement provided however, that "the Court is not bound by, nor obligated to accept these stipulations, agreements, or recommendations of the United States or Defendant."  *Id*.

At the plea hearing, Defendant was advised by counsel for the Government of the range of punishment for his conviction.  *See* Plea Tr. [Doc. No. 61-1] at 5:10-5:14.[5]  He also confirmed to the Court that he understood that "the sentence you'll receive is solely a matter for the Court to decide."  *Id*. at 12:6-12:8.  Additionally, Defendant confirmed that he understood that the Court would determine his guideline range and that he might not agree with what the Court determined his guideline range to be.  *Id*. at 12:16-12:20.  Defendant further confirmed his understanding that "[w]hile you and the government may have an agreement as to the relevant drug weights, the Court is not bound by that should the presentence investigation report find something different."  *Id*. at 16:20-16:24.

On June 7, 2022, the Court conducted a sentencing hearing.  Doc. No. 45.  The Court varied downward and sentenced Defendant to 204 months' imprisonment.  *See* Judgment [Doc. No. 40].  Defendant did not appeal.

---

[5]     Defendant was advised he faced a "possible term of imprisonment of not more than 20 years, a possible fine of not more than a million dollars, or both a fine and term of imprisonment. . . ."  Plea Tr. at 5:10-5:13.  Absent the plea agreement, Defendant's guideline range would have been 292 months to 365 months.  *See* PSR, ¶ 70.

## II. Defendant's Motion

In his § 2255 Motion, Defendant brings two claims of ineffective assistance of trial counsel alleging the following: (1) counsel failed to file a suppression motion; and (2) counsel led him to believe his guideline range would be based on only one kilogram of methamphetamine.[6] Defendant brings a third claim contending the government breached his plea agreement to limit his sentence to one kilogram of methamphetamine. However, in his Reply, Defendant states that he "abandons" that claim. *See* Doc. No. 64 at 8, n. 1. Therefore, the Court limits its review to the claims of ineffective assistance of trial counsel.

## III. Discussion

Defendant's ineffective assistance of counsel claims are governed by the well-established framework set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish ineffective assistance of counsel, a movant must show (1) that counsel's representation was deficient because it "fell below an objective standard of reasonableness" and (2) that counsel's "deficient performance prejudiced the defense." *Id*. Where, as here, a defendant has entered a guilty plea the court does "not assess the merits of pre-plea constitutional claims but instead asks whether ineffective assistance of counsel caused defendants to enter their guilty pleas involuntarily and unknowingly." *United States v. Spaeth*, 69 F.4th 1190, 1213 (10th Cir. 2023).

---

[6] Because defendant is proceeding pro se, the Court construes his filings liberally, but does not act as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008).

### A.     Ground One – Failure to File Suppression Motion

Defendant first alleges his counsel was ineffective because she failed to file a suppression motion. *See* Mot. [Doc. 51] at 4. He claims he did not give consent for the search of his vehicle, which was parked in front of his home. Nor did he give consent for police to search his home. In fact, he states he denied that the home was his. *See* Mot. at 4, ¶ 12(a) ("[T]he officer . . . asked me if the home on 2113 SW 69th Street was my house. I denied it. He then took my key set and without my consent *or a search warrant* used my key to the front door of my home, unlocked it, *and entered it*.") (emphasis added).[7]

Defendant proceeds to argue that during the search of the home law enforcement found $175,000 in Defendant's 2016 Chevrolet Silverado that was parked in the garage.[8] Yet Defendant acknowledges that when his Silverado was searched it was done "pursuant to a search warrant." *Id*. Defendant contends he was prejudiced because at sentencing, the $175,000 was converted to methamphetamine at 1 kilogram per $6,000. As a result, his sentence was increased above the 1 kilogram of methamphetamine police found in the car he was driving, parked in front of his home. *Id*.

Defendant states that he thought the search of his home and car was unconstitutional and complained to his lawyer but she did not move to suppress the evidence. *Id*. He claims had "he known that [his] lawyer could have moved to suppress the evidence", he would

---

[7]     Defendant states the address was 2113 SW 69th Street. However, this appears to be a typographical error. The record establishes the address was 2113 SW 60th Street. *See, e.g.*, PSR, ¶¶ 18-19.

[8]     As noted supra, the actual amount of money found was $175,120.00. *See* PSR, ¶¶ 21-22.

not have entered a guilty plea, if at all, until after the Court had decided the issue. *Id.*

Defendant's counsel has provided an affidavit in which she thoroughly explains the reasons for not filing a motion to suppress as she believed it lacked merit due to Defendant's consent and the fact that a search warrant had been obtained. *See* Summers Aff. [Doc. No. 61-3]. Counsel state that although Defendant claims he did not give his consent to the search of his vehicle, an agent, SA Gibson, testified to the contrary. *Id*. at 1. She further states that whether he consented to any other search is not relevant because prior to searching the residential property, law enforcement obtained a search warrant. *Id*. She acknowledges that "Agents had found a set of keys in the front passenger seat of the vehicle, one of which they used to open the door to the house" but that "law enforcement did not enter the house at that time." *Id*. at 2. Instead, "[t]hey obtained a search warrant for the house before conducting the search." *Id*.

Counsel further states that after the preliminary hearing at which SA Gibson testified, the government provided discovery which "confirmed SA Gibson's testimony and provided additional details as well." *Id*. at 3. She states that discovery showed that Defendant "had claimed ownership of the vehicle he had arrived in (Chevrolet Impala), but told agents the residence was not his and he did not live there, despite having a key." *Id*. Counsel states her assessment of the agent's testimony and reports provided in discovery led her to believe that there was no reasonable likelihood of winning a suppression motion. Specifically, she states "[i]n my experience of nearly thirty years, a law enforcement officer's sworn testimony regarding consent is very difficult to refute, particularly when

7

there is no objective evidence to the contrary." *Id.*[9]

This Court must "indulge a strong presumption that counsel's conduct falls within the wide range or reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Thus, "[s]urmounting *Strickland's* high bar is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

As to Defendant's claim that counsel should have moved to suppress based on his lack of consent to search his vehicle, the Court finds counsel did not render deficient performance. As set forth, Defendant acknowledged the vehicle belonged to him and Agent Gibson testified at the preliminary hearing that Defendant gave his consent to search the vehicle. A review of the record demonstrates that Defendant's counsel made a strategic and reasoned decision concerning the suppression issues based on a review of the facts available to her at the time and her professional experience and judgment. Nothing suggests that decision amounts to deficient performance. *See, e.g, United States v. Loya-Ramirez*, No. 23-1144, 2023 WL 8758926 at *2 (10th Cir. Dec. 19, 2023) (rejecting claim of ineffective assistance based on counsel's failure to file a suppression motion where defendant claimed search was illegal, but police officer testified that the defendant had provided his consent); *see also United States v. Chavez-Marquez*, 66 F.3d 259, 262-63 (10th Cir. 1995) (rejecting ineffective assistance claim where failure to file a motion to

---

[9] In her Affidavit, Defendant's counsel states that she has no transcript of the preliminary detention hearing and has relied on her notes, which are incomplete, to describe the testimony at the preliminary hearing. *See* Summers Aff. at 1. Defendant includes with his Reply transcribed excerpts of the preliminary detention hearing. *See* Preliminary Hearing Tr. [Doc. 64-1]. Agent Gibson's testimony at the hearing is consistent with counsel's recollection of the same. *See id.* at 3.

suppress was a "reasonable tactical decision" in light of defendant's consent to search).

Defendant further claims counsel should have moved to suppress the evidence found during the search of his residence. He contends the agents took a key found during the search of his car and "without his consent or a search warrant used my key to the front door of my home, unlocked it, and entered it." Mot. at 4. He acknowledges that agents then obtained a search warrant and pursuant to that warrant found, inter alia, the $175,000 in drug proceeds that increased his sentence. *Id.*

In his Reply, Defendant cites in support of his argument, *United States v. Bain*, 874 F.3d 1 (1st Cir. 2017). In *Bain*, the First Circuit held that "a search occurred when the police placed and turned a key in the lock of the door" to the defendant's condominium unit. *Id.* at 16. Ultimately the First Circuit concluded, however, that police could rely in good faith on the search warrant obtained and therefore, suppression of the evidence was not warranted. *Id.* at 23. In *Bain*, the First Circuit reached its holding clearly acknowledging that the issue presented, "*a matter of first impression in this circuit.*" *Id.* at 11 (emphasis added). Defendant cites no Tenth Circuit authority on this same point. The Tenth Circuit, in a decision preceding *Bain*, has noted a split of authority on this issue but has not directly addressed the issue. *See Reeves v. Churchich*, 484 F.3d 1244, (10th Cir. 2007) (citing, inter alia, *United States v. Concepcion*, 942 F.2d 1170, 1172 (7th Cir. 1991) (entry of key into defendant's apartment door constituted a search)[10]; *United States*

---

[10] In *Concepcion*, the Seventh Circuit nonetheless concluded that using a key to verify the defendant's address did not violate the Fourth Amendment. *Id.*, 942 F.2d at 1173 ("Although the owner of a lock has a privacy interest in a keyhole – enough to make the inspection of that lock a "search" – the privacy interest is so small that the officers do not need probable cause to inspect

9

*v. Lyons*, 898 F.2d 210, 212 (1st Cir. 1990) (insertion of key seized from defendant into padlock of storage unit for purposes of identifying ownership not a search).[11]

Generally, counsel is not ineffective for failing to predict future law. *See, e.g., Bullock v. Carver*, 297 F.3d 1036, 1052 (10th Cir. 2002) ("[W]e have rejected ineffective assistance claims where a defendant faults his former counsel not for failing to find existing law, but for failing to predict future law and have warned that clairvoyance is not a required attribute of effective representation." (quotation marks and citations omitted)). And the "failure to raise or recognize a potential legal argument does not automatically render counsel's performance deficient. *United States v. Babcock*, 40 F.4th 1172, 1177 (10th Cir. 2022). "[C]ounsel do not have the time, and therefore are not required, to do everything possible to help their clients." *Id*. "They are not ineffective because they fail to conceive, research, and raise every novel argument that has a chance to prevail." *Id*. (citing *New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011) (failure to raise argument that a warrantless entry into defendant's hospital room was a search violating the Fourth Amendment did not constitute deficient performance where there was a split of authority

---

it. Because agents are entitled to learn a suspect's address without probable cause, the use of the key to accomplish that objective did not violate the fourth amendment.").

[11]  In *Reeves*, a civil action alleging a violation of plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983, the Tenth Circuit concluded that when a police officer pointed his rifle through a bedroom window and followed the plaintiff's movement in the house, such conduct did not amount to a search. *Id.* at 1258-59. In at least one unpublished decision, the Tenth Circuit has held that officers could return a week after the defendant's arrest and use the keys taken from him at the time of his arrest to see if they fit locks of places suspected of harboring contraband. *United States v. Battle*, No. 98-3246, 1999 WL 596966 at *5 (10th Cir. Aug. 6, 1999).

among state courts and the Eighth Circuit had not yet addressed the issue).[12]  Here, the Tenth Circuit has not addressed the issue decided by the Eighth Circuit in *Bain* and, furthermore, the Tenth Circuit has noted the split of authority on that issue.  Thus, it appears counsel's conduct was not deficient for not raising the issue.

But the Court need not definitively decide whether counsel's performance was deficient because even if it were, the Court finds no prejudice.  The evidence found during the search of Defendant's home was used only for purposes of sentencing.  Indeed, Defendant's claim is solely directed at his sentencing.  Assuming the search of the home was unconstitutional – an assumption that, due to Defendant's underdeveloped argument, would require an analytical leap at this juncture – a district court is entitled to consider evidence seized in violation of the Fourth Amendment during sentencing proceedings.  *See United States v. Ryan*, 236 F.3d 1268, 1271-72 (10th Cir. 2001).  The only exception to this rule is where there is evidence the violation was committed with the intent to secure an increased sentence.  *Id*.  Here, however, Defendant has raised no argument, nor pointed to any evidence, that agents searched his home with the intent to secure an increased sentence.  Accordingly, Defendant cannot demonstrate prejudice from the Court's consideration of the $175,000 for purposes of sentencing.

Nor can Defendant otherwise show he was prejudiced.  "To show prejudice in 'the

---

[12]   In *Babcock*, the Court indicated the "prominence" of an issue in which a split of authority exists *might* give rise to a finding of deficient performance.  But even given the prominence of the issue before it – the legitimacy of an application note to the sentencing guidelines – the court concluded that counsel did not render deficient performance.  *Id*. at 1185.  The Court does not find the issue raised here is appropriately characterized as one involving the level of prominence contemplated in *Babcock*.

context of pleas, a defendant must show the outcome of the plea process would have been different with competent advice.'" *United States v. Kearn*, 90 F.4th 1301, 1306 (10th Cir. 2024) (quoting *Lafler v. Cooper*, 566 U.S. 156, 163 (2012)). "The prejudice inquiry is largely objective." *Id.* (citing *United States v. Dominguez*, 998 F.3d 1094, 1111 (10th Cir. 2021)). "A defendant's mere allegation that he would [not] have pleaded guilty but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief. *Id.* (internal quotation marks and citation omitted). Instead, the court "look[s] for contemporaneous evidence, i.e., the factual circumstances surrounding the plea, to determine if there is a reasonable probability the defendant would have accepted the plea deal." *Id.* (citation and internal quotation marks omitted). "When conducting the prejudice inquiry, courts will often review the strength of the prosecutor's case as the best evidence of whether defendant in fact would have changed his plea and insisted on going to trial." *United States v. Reed*, 39 F.4th 1285, 1293 (10th Cir. 2022) (internal quotation marks and citation omitted).

Here, Defendant indicated at the plea colloquy that he understood the nature of the charges against him, the possible punishment and the Constitutional rights he was waiving by entering his plea. Plea Tr. at10:25-11:3. He also understood that his sentence would be "solely a matter for the Court to decide." *Id*. at 12:1-12:8. And he understood that any stipulation about "relevant drug weights" was not binding on the Court. *Id*. at 16:20-16:25. Moreover, Defendant admits, even now, that he possessed the methamphetamine found in the vehicle outside the residence. And he offers no facts or argument that the drugs and

12

drug proceeds found inside the home were not in his possession.[13]  He only argues the agent's turning of the key in the door constituted an unlawful search.  For all these reasons, including the factual circumstances surrounding the plea and the strength of the Government's evidence, Defendant has not demonstrated a reasonable probability that he would not have accepted the plea deal absent counsel filing a motion to suppress.

>   B.    Ground Two – Whether Counsel Misled Defendant to Believe His Sentence Would Be Based on Only One Kilogram of Methamphetamine

Defendant further argues his counsel was ineffective because she told him the Government's plea offer provided that the "drug amount basis for [Defendant's] sentence would be only one kilogram of methamphetamine police had found in [his] car."  Mot. at 5.  Defendant claims his counsel told him the drugs found in his home and the money found in the truck parked in the garage of his home would not be used to calculate the sentence.  He said he entered a guilty plea in reliance on those representations and that had he known "the drug amount basis for [his] sentence would include the $175,000 found in [his] car converted to methamphetamine, [he] would have never plead [sic] guilty."  *Id.*

Defendant's counsel also addressed this claim in her affidavit.  She states that in the initial discussions with the Government, neither parties "contemplated converting the money (which was found inside the safe in the garaged vehicle) into drugs for guidelines purposes" and that both parties "envisioned the base offense level at 30."  Summers Aff.

---

[13]   Indeed, in his Motion, Defendant repeatedly refers to the residence as "my home", acknowledging that he resided there.  *See, e.g.*, Mot. at 4 (The agent "then took my key set and without my consent or a search warrant used my key to the front door of *my home*, unlocked it, and entered into it.  The other officers then entered *my home*, including *my garage* where they found my 2016 Chevrolet Silverado 1500.") (emphasis added).

13

at 4. She further states "Government counsel made an informal offer to allow [Defendant] to plead guilty to a charge with a lower statutory range (zero to 20 years) and agreed to stipulate to 30 as the appropriate base offense level in a plea agreement. This, ultimately, was the plea agreement reached by the parties." *Id*.

She acknowledges, based on a review of her notes, that she never "calculated a potential guideline range that included converting the money into drugs for the purpose of calculating guidelines." *Id*. at 4-5. She is "confident" however, that she never promised Defendant any particular advisory guideline sentencing range or predict what sentence would be imposed. *Id*. at 5. She states "[a]s a matter of course" she never makes promises or predictions about sentencing, and "consistent with [her] training and twenty years of experience with federal sentencing laws and practices" she "explain[s] to [her] clients why [she] cannot do this." *Id*. She further states that she explained to Defendant that although the parties stipulated in the plea agreement to a particular base offense level, the Court "was not bound by this or any stipulation." *Id*. She acknowledges that "based on [her] calculations, and the plea agreement, it is possible [Defendant] expected he would receive a sentence within or below a guideline range that did not include the money-to-drugs conversion." *Id*.[14]

---

[14] Counsel further states that after reviewing the presentence investigation report with Defendant, she "submitted objections specifically to inclusion of the money-converted-to drugs in the base offense level and to specific offense characteristics involving the firearm and maintaining a premises." *Id*. She is "certain" she did not tell Defendant that the Government "had gone back on our agreement" because there was no basis upon which to allege a breach of the plea agreement and that Defendant may be confusing " 'government' with 'probation office,' because it is accurate to say the probation office performed its guideline calculation without regard to the plea agreement – which is its normal practice." *Id*. at 6.

In addition to the advice Defendant's counsel provided to him, Defendant was advised in the plea agreement that the Court was free to deviate from stipulations of the parties regarding sentencing. *See* Doc. 30 at 7 ("Defendant acknowledges and understands that the Court is not bound by, nor obligated to accept, these stipulations, agreements, or recommendations of the United States or Defendant."). Defendant was further advised that "even if the Court rejects one or more of these stipulations, agreements, or recommendations, that fact alone would not allow Defendant to withdraw Defendant's plea of guilty." *Id.* at 7-8. And, as previously discussed, again at his plea hearing, the Court advised Defendant that it was not bound by the parties' stipulations and that he would not have a right to withdraw his plea if the Court did not "go along with the suggestions in the plea agreement in regard to sentencing" and Defendant stated he understood this. *See* Plea Tr. at 16:16-16:19. The Court specifically drew Defendant's attention to the fact that "[w]hile you and the government may have an agreement as to the relevant drug weights, the Court is not bound by that should the presentence investigation report find something different." *Id.* at 16:20-16:24. The Court asked Defendant if he understood that and Defendant responded "Yes." *Id.* at 16:24-16:25.

On review of the record, the Court finds Defendant fails to establish either deficient performance or prejudice. The record reflects counsel candidly advised Defendant about his potential sentence but consistent with her training and practice, never made any promises to him or representations about what sentence he would receive. To the contrary, she advised him she could not make such promises and further that the Court would not be bound by any such stipulations. *See Strickland*, 466 U.S. at 689 (explaining that "a court

15

must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). And the record further supports that Defendant knowingly and voluntarily entered his plea, with full knowledge that the Court would not be bound by any stipulations of the parties. To that end, the Court expressly directed Defendant's attention to "relevant drug weights" and told Defendant that it was not bound by an agreement between Defendant and the Government with respect thereto. Moreover, had Defendant gone to trial and been found guilty, Defendant faced a much higher guideline range. *See* PSR at 13-14.

In sum, the Court finds nothing supports Defendant's claim that he was misled by counsel and, therefore, the Court finds no deficient performance by counsel. Nor does the Court find Defendant suffered prejudice. Accordingly, Defendant's claim is denied.

### IV.   **Evidentiary Hearing**

Having fully reviewed the record and the governing law, the Court finds an evidentiary hearing is not warranted. *See* 28 U.S.C. § 2255(b) (A hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

### V.   **Motion to Appoint Counsel**

Defendant requests appointment of counsel for purposes of his § 2255 Motion. However, there is no constitutional right to counsel beyond the direct appeal of a conviction. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also Swazo v. Wyo. Dep't of Corrs.*, 23 F.3d 332, 333 (10th Cir. 1994). The Court has the discretionary ability to appoint counsel under 18 U.S.C. § 3006A(a)(2)(B), unless the matter requires an

evidentiary hearing.  The Court has determined no evidentiary is warranted.  Moreover, Defendant's primary reason for seeking appointment of counsel is based on his view that this Court has not acted promptly enough in ruling on this Motion and he needs counsel to raise the issue at an appellate level through a writ of mandamus.  As noted supra, *see* n. 3, Plaintiff has filed his writ of mandamus and he has done so without the assistance of counsel, rendering the basis for his request moot.  For these reasons, Defendant's request for appointment of counsel is denied.

## VI.    Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. No. 51] is DENIED.  A separate judgment shall be entered.

IT IS FURTHER ORDERED that Defendant's Motion for Appointment of Counsel [Doc. No. 66] is DENIED.

IT IS FURTHER ORDERED that  pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a movant. A COA may issue only upon "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2). To make this showing, Defendant "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]'" *United States v. Manzanares*, 956 F.3d 1220, 1226-27 (10th Cir. 2022) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In the present case, the Court concludes that Defendant has not made a substantial showing of the denial of a constitutional right.

17

Therefore, a COA is DENIED and the denial shall be included in the judgment.

IT IS SO ORDERED this 5th day of August, 2024.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE